# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WISCONSIN

Estate of Ryan L. Clark

    Plaintiff,

    v.                         Case No. 14-cv-1402-CNC

County of Green Lake,
Correctional Healthcare Companies, Inc.,
Health Professionals, Ltd,
and
Tina Kuehn, Bruce Walker, and
Steven Schonscheck,

    each in his or her individual capacity,

    Defendants.

# FIRST AMENDED COMPLAINT

### I.    NATURE OF ACTION

101.    This is a civil action brought pursuant to 42 U.S.C. § 1983 in order to obtain monetary damages as a result of the Defendants' (individual defendants were each working at Green Lake County Correctional Facility) having been deliberately indifferent to the serious medical needs of Ryan Clark while he was an inmate at the

Green Lake County Correctional Facility. That indifference resulted their failure to protect Mr. Clark from his suicidal condition which led to his death while in custody.

## II. JURISDICTION AND VENUE

201. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

202. The Court has jurisdiction over the pendent, or supplemental, state claims pursuant to 28 U.S.C. § 1367.

203. The Eastern District of Wisconsin is the proper venue for this action because the Plaintiff's claims arise within the geographical boundaries of the Eastern District of Wisconsin within the meaning of 28 U.S.C. § 1391(b).

## III. PARTIES

A. <u>Plaintiff</u>

301. The Plaintiff, the Estate of Ryan L. Clark, is a legal entity with the capacity to sue and be sued.

B. <u>Defendants</u>

302. Defendant Green Lake County is a Wisconsin unit of local government with the capacity to sue and be sued in this Court.

303. Green Lake County is sued for its own acts and omissions and also as the entity that is responsible to indemnify Defendants Walker and Schonscheck under Wisconsin Statute § 895.46.

2

304. Correctional Healthcare Companies, Inc., (hereinafter, "CHC") is a corporation that is licensed to do business in the State of Wisconsin.

305. Health Professionals, Ltd. ("HPL") is a corporation that, in 2012, was licensed to do business in the State of Wisconsin.

306. Throughout May 2012, either HPL or CHC (or both) was under contract with Green Lake County to provide healthcare for inmates at the Green Lake Correctional Facility.

307. Defendant Tina Kuehn is, on information and belief, an adult resident of Wisconsin.

308. Throughout May, 2012, Defendant Kuehn was employed by HPL, and/or CHC, as a nurse at the Green Lake County Correctional Facility in Green Lake, Wisconsin.

309. Defendant Bruce Walker is, on information and belief, an adult resident of Wisconsin.

310. Throughout May, 2012, Defendant Walker was employed by Green Lake County as a correctional officer at the Green Lake County Correctional Facility in Green Lake, Wisconsin.

311. Defendant Steven Schonscheck is, on information and belief, an adult resident of Wisconsin.

3

312. Throughout May, 2012, Defendant Schonscheck was employed by Green Lake County as a correctional officer at the Green Lake County Correctional Facility in Green Lake, Wisconsin.

313. Each individual Defendant was acting within the scope of his or her employment within the meaning of §895.46, Wis. Stats., in regard to the conduct and actions asserted in this Amended Complaint.

314. Each individual Defendant was acting under color of state law within the meaning of 42 U.S.C. § 1983 in regard to the conduct and actions asserted in this Amended Complaint.

## IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

401. On May 14, 2007, Ryan Clark, having been convicted in Green Lake County Case 2006 CF 140 of violating Wis. Stat. § 346.63(1)(a), operating under the influence 5th offense, was sentenced to eighteen months in state prison, followed by three years on extended supervision.

402. On August 24, 2007, Ryan Clark, having been convicted in Marquette County Case 2006 CF 95 of violating Wis. Stat. § 346.63(1)(a), operating under the influence 5th+ offense, was sentenced to twenty-seven months in state prison, followed by three years on extended supervision.

403. The sentence in Marquette County Case 2006 CF 95 was ordered to be served concurrent with the sentence in Green Lake County Case 2006 CF 140.

4

404. Ryan Clark served his sentences in prison and was released to extended supervision on or about February 24, 2009.

405. After being placed on extended supervision in February, 2009, Ryan Clark was admitted to Green Lake County Jail approximately eight times in the next two years, each time placed on a "hold" by his extended supervision officer as a result of an alleged infraction of the rules of extended supervision and each time under the influence of alcohol.

406. On one occasion while he was an inmate in Green Lake County Jail, on or about June 4, 2009, Ryan Clark was perceived by Green Lake County Jail staff to be suicidal and was placed on Special Watch Observation as a result.

407. While Clark was on Special Watch Observation, he was checked by corrections staff at least once every fifteen minutes.

408. Defendant Bruce Walker was one of the correctional officers who observed and interacted with Ryan Clark while Clark was on Special Watch Observation at Green Lake County Jail in 2009.

409. During his several admissions to Green Lake County Jail between February, 2009 and August, 2011, Mr. Clark was frequently given medications for depression while he was in jail.

410. For example, while in Green Lake County Jail in June, 2009, he was prescribed Fluoxetine for treatment of his depression.

5

411. During his stay at the Green Lake County Jail in August, 2010, Ryan Clark was prescribed Sertraline and Prozac, both antidepressants.

412. During his stay at the Green Lake County Jail in March, 2011, Ryan Clark was prescribed Sertraline for treatment of his depression.

413. During his stay at the Green Lake County Jail in August, 2011, Ryan Clark was prescribed Sertraline for treatment of his depression.

414. In September, 2011, Mr. Clark's extended supervision was revoked, and he was returned to prison.

415. Mr. Clark was released from prison and returned to extended supervision on November 29, 2011.

416. In January, 2012, Mr. Clark was admitted to the Green Lake County Jail and required to serve a 60 day sanction as a result of having violated provisions of his extended supervision.

417. Shortly after he was admitted to the Green Lake County Jail in January, 2012, Ryan Clark was given a Suicide Assessment by Green Lake County Jail Intake Officer Sgt. Liz Pflum.

418. At that time, Sgt. Pflum assessed Ryan Clark as a "maximum" suicide risk.

419. Shortly after he was admitted to the Green Lake County Jail in January, 2012, Ryan Clark was given a Health Assessment by Defendant Nurse Tina Kuehn.

420. At that time, Nurse Kuehn assessed Ryan Clark as suffering from depression and alcoholism.

421. While he was incarcerated in Green Lake County Jail, serving the 60 day sanction from January to March, 2012, Trazadone was prescribed for Ryan Clark.

422. While he was incarcerated in Green Lake County Jail, serving the 60 day sanction from January to March, 2012, Ryan Clark had seven visits with the mental health worker, all of which were noted on his jail records.

423. Ryan Clark was released from jail on or about March 23, 2012.

424. On or about May 23, 2012 Ryan Clark was again admitted to the Green Lake County Jail as a result of his extended supervision agent having placed a "hold" on him for violating terms of his extended supervision.

425. When Mr. Clarke was admitted to jail, a preliminary breath test was administered to him, which showed he had a blood alcohol reading of 0.27.

426. When Ryan Clark was admitted to the Green Lake County Jail in May, 2012, Defendant Correctional Officer Bruce Walker acted as Intake Officer.

427. As part of the jail's intake process, Defendant Walker performed a security risk assessment and a suicide risk assessment on Clark.

428. During his intake interview, Ryan Clark told Officer Walker that he (Clark) was taking medication for depression, but he could not remember the name of the medication, and Walker made a note of Clark's having told him that in the jail record.

7

429. For one month prior to his May, 2012 incarceration, Ryan Clark had been taking Citalopram which had been prescribed as treatment for his depression.

430. When Correctional Officer Bruce Walker performed the suicide risk assessment on Ryan Clark, he rated Clark as a maximum risk for suicide.

431. In 2012, Green Lake County Jail policy and procedure required that when an arriving inmate is perceived to be a potential suicide risk, that inmate will be properly housed, monitored, and evaluated by mental health staff.

432. In 2012, Green Lake County Jail policy and procedure required that an inmate's risk assessment be considered when determining the inmate's classification and housing placement.

433. In 2012, Green Lake County Jail policy and procedure required that if an inmate was assessed as a suicide risk, he/she should be placed on "Special Watch" status in a Special Needs Cell, if one is available.

434. In spite of the fact that he had assessed Ryan Clark as being at maximum risk for attempting suicide, Defendant Walker did not order that Ryan be housed in a special needs suicide prevention cell.

435. In 2012, Green Lake County Jail policy and procedure required that the jail staff would routinely make referrals of inmates deemed to be suicide risks to medical and/or mental health staff for evaluation and possible determination of preventative actions.

436. In spite of the fact that he had assessed Ryan Clark as being at maximum risk for attempting suicide, Defendant Walker did not refer Clark to medical or mental health staff for evaluation and possible determination of preventative actions.

437. Shortly after he was admitted to the Green Lake County Jail in May, 2012, and given his security and suicide risk assessment by Defendant Walker, Ryan Clark was given a Health Assessment by Defendant Nurse Tina Kuehn.

438. Defendant Kuehn ordered that Clark be assigned to a special needs cell.

439. In so doing, Defendant Kuehn made no mention that Clark was a potential suicide risk; she assigned him to a special needs cell so that his alcohol detoxification could be monitored.

440. Although she was aware that the Suicide Risk Assessment had rated Ryan Clark as maximum risk, Nurse Kuehn did not ask that Clark be placed on Special Watch for suicide prevention.

441. Although she was aware that the Suicide Risk Assessment had rated Ryan Clark as maximum risk, Nurse Kuehn did not inform the correctional staff at Green Lake County Jail that Clark was a potential suicide risk,

442. Although she was aware that the Suicide Risk Assessment had rated Ryan Clark as maximum risk, Nurse Kuehn did not refer Clark for mental health assessment or treatment.

9

443. During his health assessment interview, Ryan Clark told Nurse Kuehn that he was taking medication for depression, but he could not remember the name of the medication, and Kuehn made a note Clark's having told her that in his medical record.

444. Nurse Kuehn knew that most medications prescribed for treatment of depression cause physical dependency such that precipitous withdrawal of the medication is likely to cause withdrawal symptoms.

445. Nurse Kuehn knew that precipitous withdrawal of medication prescribed for treatment of depression is likely to cause aggravated depression.

446. Nurse Kuehn knew that Ryan Clark had a history of suicidal ideation.

447. Nurse Kuehn knew that anything that would tend to aggravate Mr. Clark's depression was likely to increase his risk of committing suicide.

448. Nurse Kuehn knew that if Mr. Clark had been taking medication as treatment for depression prior to his admission to Green Lake County Jail that was effective to any extent in ameliorating his symptoms of depression, discontinuation of that medication was likely to cause a relapse where he would experience a return to the level of symptomatology that he had been experiencing prior to treatment.

449. Nurse Kuehn made no effort to follow up and find out what medication Ryan Clark had been taking prior to his admission to the Green Lake County Jail.

450. Had she made even a minimal follow-up inquiry of Mr. Clark or called his parents, she would have learned what medication he had been taking, inasmuch as the partially consumed bottle of medication was at his home.

451. On May 27-28, 2012, Ryan Clark was still housed in a special needs cell.

452. On May 27-28, 2012, Defendant Correctional Officer Steven Schonscheck was working the 6 p.m. to 6 a.m. shift at Green Lake County Jail.

453. Defendant Schonscheck was assigned to work as the Master Control Aide.

454. One of his tasks while working at that assignment was to monitor the video screens of the security cameras that were placed in each of the special needs cells, including that of Ryan Clark.

455. Video from the security camera shows that on May 28, 2012, at approximately 12:25 a.m., Ryan Clark stood in front of furniture in his cell, trying to attach a piece of fabric to it, and this activity continued on and off for approximately eight minutes.

456. Video from the security camera shows that at approximately 12:39, Clark was sitting on his bed, tying pieces of fabric together, pulling fabric through something, and frequently checking the door of his cell, and this activity went on for approximately three minutes.

457. Video from the security camera shows that at approximately 12:50, Sgt. Pflum went by Clark's cell, doing her security check.

11

458. Sgt. Pflum looked into Clark's cell briefly and then moved away, continuing on her rounds.

459. Video from the security camera shows that after Sgt. Pflum moved out of sight of his cell, Ryan Clark stood by his bed, bent over it, with his hands on the makeshift bedroll.

460. Video from the security camera shows that at approximately 12:53, Ryan Clark lifted the bedroll off his bed and carried it to the other side of a little wall that divided the sleeping part of the cell from the bathroom part of the cell.

461. At approximately 12:54, in full view of the security camera, Ryan Clark hefted his bedroll, then bent down over it, and appeared to be checking the strength of knots in the fabric holding the mattress in a roll.

462. He then tied some of the fabric that was tied to the bedroll around his neck.

463. Facing the security camera, Ryan stood with his back to the little wall, lifted the bedroll over his head, looped the fabric around his neck, and eased the bedroll over the little wall.

464. Video from the security camera shows that at approximately 12:55, Ryan Clark was standing, leaned back with his head and neck resting on the little wall, fabric around his neck tied to the bedroll which had been thrown over the wall, his legs out straight, feet apart.

12

465. Video from the security camera shows that shortly after, Ryan Clark sagged into semi-sitting position, legs still out.

467. He made some minor arm movements; then his arms fell to the side.

468. For a moment Clark's hands went up toward his throat; then they dropped to his sides.

469. Video from the security camera shows that Ryan Clark then sagged further, so that he was sitting all the way on floor, with his head drooped forward, and this motion caused the bedroll to lift up to near the top of the little wall so it was completely visible on camera.

470. After approximately 12:56:25, there was no further movement.

471. Officer Schonscheck did not observe the activities described in paragraphs 464 – 478, above, which occurred over a period of some thirty minutes (from 12:25 – 12:56) while Ryan Clark prepared to and did commit suicide in full view of the security camera.

472. At approximately 1:45, Sgt. Pflum made her regular rounds again and discovered Ryan Clark.

473. She summoned help and attempted to revive Mr. Clark.

474. Ryan Clark was taken to the emergency room at Berlin Memorial Hospital and from there flown to Theda Clark Hospital.

475. There he was pronounced dead at approximately 8:53 p.m. on May 28, 2012.

13

476. The Green Lake County Jail had a regular practice and policy of permitting its correctional officers to disregard the fact that an inmate was rated as a maximum suicide risk on the Spillman admission risk assessment.

## V. VIOLATIONS OF LAW

501. Because of their deliberate indifference in failing to protect Mr. Clark from his known risk of committing suicide, the individual Defendants are responsible for having failed to protect Mr. Clark while he was in their care and/or custody from his known propensity to commit suicide, in violation of Mr. Clark's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

502. Because of their deliberate indifference in addressing the known serious medical needs of Mr. Clark, the individual Defendants are responsible for having allowed Mr. Clark to commit suicide while in their care and/or custody, in violation of Mr. Clark's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

503. Because of her deliberate indifference in failing to ascertain the medication which Mr. Clark had been prescribed and was taking prior to his May, 2012, incarceration and her failure to address the need to either continue or replace such medication or to withdraw her patient from it gradually, Defendant Tina Kuehn was

deliberately indifferent to Ryan Clark's serious medical needs in violation of Mr. Clark's right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution.

504. Defendant Green Lake County maintained a policy, custom, or practice of deliberate indifference to the serious medical needs of inmates at the Green Lake County Jail, including Ryan Clark, in violation of Mr. Clark's rights protected by the Eighth Amendment to the United States Constitution.

505. Defendants HPL and CHC maintained a policy, custom, or practice of deliberate indifference to the serious medical needs of inmates at the Green Lake County Jail, including Ryan Clark, in violation of Mr. Clark's rights protected by the Eighth Amendment to the United States Constitution.

506. As a supplemental state claim, Defendants HPL and CHC are vicariously liable for the tort(s) of their employee, Nurse Tina Kuehn, under the doctrine of *respondeat superior*.

## VI. DAMAGES

601. By virtue of unlawful actions alleged above, Ryan Clark sustained loss of life, economic losses, pain, suffering, mental and emotional distress, and other damages for which his estate should be compensated in an amount deemed just by the Court.

602. Because the conduct of the individual and corporate Defendants' demonstrated a blatant disregard for Ryan Clark's constitutional rights, the Plaintiff

also seeks punitive damages in a further amount that will serve as a deterrent to the individual and corporate Defendants and others who are similarly situated from repeating such behavior in the future.

## VII. CONDITIONS PRECEDENT

701. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. DEMAND FOR JURY TRIAL

801. Plaintiff hereby demands a trial by jury of all issues triable of right to a jury.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant judgment against Defendants, awarding it:

901. Monetary damages in an amount that will fairly compensate Plaintiff for its injuries;

902. Its costs, attorneys' fees, and litigation expenses as well as any further relief that this Court deems just.

Dated this 15th day of April, 2016.

Respectfully submitted,

Estate of Ryan L. Clark, Plaintiff

By

THE JEFF SCOTT OLSON LAW FIRM, S. C.
ATTORNEYS FOR PLAINTIFF
JEFF SCOTT OLSON
State Bar Number 1016284
131 West Wilson Street, Suite 1200
Madison, Wisconsin 53703
Phone   (608) 283-6001
Fax     (608) 283-0945
Email   JSOlson@scofflaw.com


/s/ Jeff Scott Olson
_____
Jeff Scott Olson

### Certificate of Service

I hereby certify that on Friday, April 15, 2016, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Charles H. Bohl, Timothy H. Posnanski, Kurt M. Simatic, W. Patrick Sullivan, and Steven T. Elmer, and I hereby certify that I have mailed by United States Postal Service the document to the following non ECF participants: none.

/s/ Jeff Scott Olson
_____